UNITED STATES, Appellee

v.

Kenneth C. WILLIAMS, Sergeant First Class, U.S. Army, Appellant.

No. 95–0827.
Crim.App. No. 9302238.

U.S. Court of Appeals for the Armed Forces.

Argued March 25, 1996.

Decided Sept. 18, 1996.

For Appellant: *Captain Mark I. Goodman* (argued); *Colonel Stephen D. Smith, Major Michael L. Walters, Captain Matthew A. Myers, Sr.* (on brief); *Lieutenant Colonel John T. Rucker* and *Captain Victor A. Tall.*

For Appellee: *Colonel John M. Smith* (argued); *Lieutenant Colonel Eva M. Novak, Captain John W. O'Brien, Captain Jinny Chun* (on brief).

*Opinion of the Court*

GIERKE, Judge:

A general court-martial composed of officer and enlisted members at Vicenza, Italy, convicted appellant, contrary to his pleas, of indecent assault, using indecent language, and obstruction of justice, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. The adjudged and approved sentence provides for a bad-conduct discharge, confinement for 6 months, total forfeitures, and reduction to the lowest enlisted grade. The Court of Criminal Appeals af-

firmed the findings and sentence without opinion.

We granted review of the following issue:

WHETHER APPELLANT WAS DENIED A FUNDAMENTALLY FAIR TRIAL BECAUSE THE MILITARY JUDGE LIMITED DEFENSE COUNSEL'S ABILITY TO CONDUCT GROUP *VOIR DIRE* AND DENIED DEFENSE COUNSEL THE OPPORTUNITY TO CONDUCT INDIVIDUAL *VOIR DIRE*.

In addition, we specified the following issue:

WHETHER THE MILITARY JUDGE ERRED BY ALLOWING THE GOVERNMENT TO EXERCISE A PEREMPTORY CHALLENGE ON LIEUTENANT COLONEL JAMES E. WRIGHT IN VIOLATION OF *BATSON V. KENTUCKY,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), AND *UNITED STATES V. SANTIAGO–DAVILA,* 26 MJ 380 (CMA 1988).

We resolve both issues against appellant on the ground that the military judge did not abuse his discretion.

*Factual Background*

During the military judge's *voir dire* of the court members, Major (MAJ) Jones, Chief Warrant Officer Four (CW4) Lukas, and Master Sergeant (MSG) Garnto disclosed that they read a newspaper article about the case during the weekend before trial. CW4 Lukas said his reaction to the article was, "I wished that I wouldn't be involved." MSG Garnto also disclosed that he had seen a "blotter report" about the case. Neither side questioned any of the members further about their knowledge of the case.

Trial counsel asked if any members were "a member of the Masonic Order or a Mason," and received an affirmative response from Lieutenant Colonel (LTC) Wright. Defense counsel received a negative response when he asked LTC Wright if appellant's membership in the Masons would affect his ability to evaluate the evidence.

In response to questioning by defense counsel, Sergeant Major (SGM) Gardner ex-

pressed difficulty with the proposition that no adverse inference could be drawn from an accused's failure to testify. She explained, "I just think that if he were able to clarify the situation, that he would want—that if it were me, I would want to clarify it." One member, MAJ Baardson, disclosed that he "had a few beers . . . up at the club on occasions" with Special Agent (SA) Andrews, a government witness.

Based on their responses during general *voir dire,* defense counsel requested individual *voir dire* of MAJ Baardson, CW4 Lukas, and MSG Garnto. The military judge responded that he did not "see any areas . . . that would require individual *voir dire.*" Defense counsel asked for a session under Article 39(a), UCMJ, 10 USC § 839(a), but the military judge responded, "That's what I'm trying to avoid." Defense counsel then gave the military judge a "Motion for Appropriate Relief." In this motion defense counsel requested that the military judge "permit individual *voir dire* without requiring the defense to state the reasons for that request before and in the presence of the members." The motion argued that "compelling the defense to justify its request for individual *voir dire* before and in the presence of the members places the defense in an adversarial position to the panel members, which tends to undermine, belittle, and compromise the defense before the members." The motion did not state what defense counsel wanted to ask the members.

After reading the defense motion, the military judge questioned MAJ Baardson, CW4 Lukas, and SGM Gardner. He asked MAJ Baardson if his "relationship" with SA Andrews is "purely a social relationship." MAJ Baardson answered, "Yes, sir." The military judge asked if "having had a few beers with him at the club will require you, or make you lean one way or another, when you hear his testimony." MAJ Baardson answered, "No, sir." MAJ Baardson also said he would not give SA Andrews "more credence" than another witness. Finally, MAJ Baardson said he felt he was "able to sit as an impartial and fair court member."

The military judge asked CW4 Lukas what he meant when he said that he wished he did not have to be a member of the panel in this case. CW4 Lukas responded, "I saw the article as a case about sexual abuse, and I think that's a particularly difficult crime to have to deal with." The military judge asked, "Are you able to carry out your mission as a member of this panel, despite your feelings that you'd rather be somewhere else as probably most of the panel would rather be?" CW4 Lukas responded, "I'm here, sir." The military judge then asked, "Despite your feelings, are you going to be able to sit as a fair and impartial panel member?" CW4 Lukas responded, "I'll do my best."

The military judge asked SGM Gardner whether she would be able to follow an instruction not to draw any adverse inference from the accused's failure to testify. She responded, "Yes, sir."

The military judge then convened an Article 39(a) session and asked defense counsel if he desired any further individual *voir dire.* Defense counsel asked for individual *voir dire* of SGM Gardner about her feelings concerning appellant's right to remain silent and not testify at trial. He also asked for individual *voir dire* of MAJ Baardson to explore "the nature and extent" of his contact with SA Andrews and "if he's formed any opinion as to whether he's a truthful person." Finally, defense counsel asked for individual *voir dire* to explore CW4 Lukas' views on the appropriateness of confinement if appellant was convicted.

The military judge denied defense counsel's request for individual *voir dire.* He explained, "You could ask all of those questions in front of the panel, any hypothetical taint on other members is purely hypothetical."

A defense challenge for cause of SGM Gardner was granted. A challenge for cause against MSG Garnto was denied. Defense counsel did not challenge MAJ Baardson or CW4 Lukas for cause, but exercised a peremptory challenge against MAJ Baardson. Defense counsel explained:

Your Honor, and I should state that we are peremptory [sic] challenging Major Baard-son. Because we feel that we did not have sufficient opportunity to explore on *voir dire* whether or not there was basis for a challenge for cause. That we also feel we did not have sufficient opportunity to explore whether or not there was a basis for challenge for cause as against Warrant Officer Lukas. And these are the people that we would have—we probably would have entered a peremptory challenge against Master Sergeant Garnto if there had been no—if there had been sufficient information with respect to Major Baardson, and Chief Lukas to warrant challenges for cause. So Major Baardson is the preemptory challenge, just want to put on record so no one thought I was waiving anything.

The military judge responded to defense counsel, "Well, no one kept you from asking the questions."

Trial counsel exercised a peremptory challenge against LTC Wright. Defense counsel asked for a race-neutral explanation for the "peremptory challenges [sic] against the senior black officer." Trial counsel responded that "it's because he's a Mason. And the Government believes that the accused in this case is a Mason, and there may be some sort of alliance there." The military judge accepted trial counsel's explanation and granted the peremptory challenge.

### Restriction of Voir dire (Granted Issue)

■ Appellant asserts that the military judge unreasonably and arbitrarily limited defense counsel's ability to make reasoned and informed decisions about challenges by denying the request for individual *voir dire.* The Government asserts that appellant has not shown how his ability to conduct *voir dire* was limited. The Government argues that the only limitation on *voir dire* was self-induced because defense counsel was given two opportunities to conduct further *voir dire* and chose not to.

■ RCM 912(d), Manual for Courts-Martial, United States (1995 ed.), provides in part: "The military judge may permit the parties to conduct the examination of members or may personally conduct the examina-

tion.... A member may be questioned outside the presence of other members when the military judge so directs." The military judge is given wide discretion in determining the scope of *voir dire. United States v. White,* 36 MJ 284, 287 (CMA 1993). "The nature and scope of the examination of members is within the discretion of the military judge." RCM 912(d), Discussion. Military practice parallels practice in federal district courts under Fed.R.Crim.P. 24(a), where the judge has broad discretion to decide what questions may be asked of jurors to determine their fitness to serve. *See Hebron v. Brown,* 248 F.2d 798, 799 (4th Cir.1957). "When this Court reviews" issues involving "a military judge's limitations on *voir dire,* we 'should reverse only when a clear abuse of discretion, prejudicial to a defendant, is shown.'" *United States v. Loving,* 41 MJ 213, 257 (1994), citing *United States v. Smith,* 27 MJ 25, 28 (CMA 1988), quoting *United States v. Parker,* 6 USCMA 274, 280, 19 CMR 400, 406 (1955); *Loving aff'd,* —— U.S. ——, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996); *see also* S. Childress & M. Davis, 2 *Federal Standards of Review* § 11.17 at 11–69 (2d ed. 1992) ("[I]n the absence of an abuse of discretion and a showing that the rights of the accused have been prejudiced thereby, the scope and content of *voir dire* will not be disturbed on appeal.").

Applying the principles above, we hold that the military judge did not abuse his discretion. Any appellate issue regarding SGM Gardner was mooted when the military judge granted the defense challenge for cause. Defense counsel declined to further question MAJ Baardson, CW4 Lukas, or MSG Garnto. While the military judge ran the risk of tainting other members by not permitting individual *voir dire,* he had the discretion to run that risk. Since defense counsel decided to forgo further questioning, he cannot now complain that his ability to ask questions was unduly restricted. *See United States v. Slubowski,* 7 MJ 461, 463 (CMA 1979), *reconsid-* *eration not granted by equally divided vote,* 9 MJ 264 (1980).

*Peremptory Challenge* (Specified Issue)

■ Appellant asserts that the Government's peremptory challenge of LTC Wright because he was a Mason was an impermissible challenge based on his religion. The Government asserts that trial counsel offered a race-neutral explanation for the challenge and argues that defense counsel made no objection to the challenge based on religion. We hold that the military judge did not abuse his discretion by allowing the challenge.

■ In *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court held that a prosecutor may not peremptorily challenge a juror based on race. The *Batson* rule applies to military practice. *See United States v. Santiago–Davila,* 26 MJ 380, 390 (CMA 1988). The Supreme Court has not extended *Batson* to challenges based on religion. *See State v. Davis,* 504 N.W.2d 767 (Minn.1993); *Casarez v. Texas,* 913 S.W.2d 468, 496 (Tex.Crim.App. 1994) (on rehearing). A military judge's determination that trial counsel's peremptory challenge did not violate *Batson* is entitled to "great deference" and will not be reversed in the absence of "clear error." *United States v. Curtis,* 33 MJ 101, 105 (CMA 1991), citing *Hernandez v. New York,* 500 U.S. 352, 364, 372, 111 S.Ct. 1859, 1868, 1873, 114 L.Ed.2d 395 (1991).

The record is devoid of any indication of LTC Wright's religious affiliation or beliefs. Defense counsel did not assert at trial that the peremptory challenge of LTC Wright was based on religion. The record reflects only that LTC Wright was a member of the Masons, a fraternal organization. *See* Webster's Ninth New Collegiate Dictionary (1991) 491 ("Freemason") and 730 ("Masonic"). Trial counsel offered a race-neutral explanation based on LTC Wright's membership in the same fraternal organization as appellant. *Batson* does not prohibit challenges based on fraternal affiliation. Accordingly, we hold that the military judge's ruling was not "clear error."

*Decision*

The decision of the United States Army Court of Criminal Appeals is affirmed.

Chief Judge COX, Judges SULLIVAN, CRAWFORD, and WILKINS * concur.

---

* Judge William W. Wilkins, Jr., of the United States Court of Appeals for the Fourth Circuit, sitting by designation pursuant to Article 142(f), Uniform Code of Military Justice, 10 USC § 942(f).