**UNITED STATES**

v.

**Samuel C. WALKER, 460 23 8619, Private (E–1), U.S. Marine Corps.**

**NMCM 98 00154.**

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 20 Aug. 1997.

Decided 31 March 1999.

Capt Curtis M. Allen, USMC, Appellate Defense Counsel.

LT Kevin S. Rosenberg, JAGC, USNR, Appellate Government Counsel.

Before LEO, Senior Judge, TROIDL and ANDERSON, Appellate Military Judges.

ANDERSON, Judge:

Contrary to his pleas, the appellant was found guilty of one specification of wrongful use of marijuana in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (1994). A panel of officer and enlisted members, sitting as a special court-martial, sentenced him to confinement for 60 days, forfeiture of $600.00 pay per month for 2 months, and a bad-conduct discharge. The convening authority approved the sentence as adjudged.

We have examined the record of trial, the appellant's three assignments of error, the Government's response, and carefully considered oral argument. We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. *See* Arts. 59(a) and 66(c), UCMJ.

## I.

In his first assignment of error, the appellant contends that the military judge's ruling on a peremptory challenge was clearly erroneous. We disagree.

During *voir dire,* the trial counsel asked the members' array if they agreed that if the Government proved beyond a reasonable doubt that the metabolite THC was found in the accused's urine, that based on that fact alone, they could infer that he knowingly and wrongfully used marijuana. Every member agreed. As an immediate follow-on question, the trial counsel asked an individual member, Sergeant R, what the word "inference" meant to him. Sergeant R responded that he was not sure.

The trial counsel exercised a peremptory challenge against Sergeant R. The defense counsel did not object. Because both the appellant and Sergeant R were African-American, the military judge *sua sponte* asked the trial counsel if he could provide a race-neutral basis for the challenge. The trial counsel stated:

> The government wasn't comfortable when we asked him about what he thought inference was during our group voir dire. He was saying that he didn't quite get it and didn't quite understand it. And based upon that, I don't think he can follow the military judge's instructions in this case.

Record at 74. The defense counsel posed no objection to this basis, and the military judge granted the peremptory challenge.

■ We find that the appellant's failure to object to the reason given for the challenge waived the issue on appeal. Although our superior court has never addressed this specific issue, the federal courts that have confronted this issue have uniformly adopted a waiver rule. *United States v. Pulgarin,* 955 F.2d 1, 1–2 (1st Cir.1992); *United States v. Rudas,* 905 F.2d 38, 41 (2d Cir.1990); *Davis v. Baltimore Gas and Electric Co.,* 160 F.3d 1023, 1027–28 (4th Cir.1998); *United States v. Arce,* 997 F.2d 1123, 1126–27 (5th Cir. 1993); *United States v. Chandler,* 12 F.3d

1427, 1430–32 (7th Cir.1994); *Hopson v. Fredericksen,* 961 F.2d 1374, 1377–78 (8th Cir. 1992); *United States v. Contreras–Contreras,* 83 F.3d 1103, 1104–05 (9th Cir.1996). We also adopt that rule. A departure from the civilian norm requires justification, and we find none. Art. 36(a), UCMJ; *United States v. Ezell,* 6 M.J. 307, 313 (C.M.A.1979) ("When a party urges that a different rule obtains in the military than in the civilian sector, the burden is upon that party to show the need for such a variation."); *Courtney v. Williams,* 1 M.J. 267, 270 (C.M.A.1976). Requiring a contemporaneous objection to preserve the issue will result in argument by counsel, findings of fact and a ruling by the military judge, and a complete record for appellate review. When no objection is made, the possibility for an immediate remedy (disallowing the peremptory strike) will be lost. If the defense counsel believes that the proffered explanation is nothing more than a pretext for racial discrimination, he or she must not sit idle.

■ Even if the issue were not waived, we would find no error. A military judge's decision on the exercise of a peremptory challenge for allegedly racially discriminatory reasons is accorded great deference on appeal. *United States v. Williams,* 44 M.J. 482, 485 (1996). The standard of review for this court is whether that decision was clearly erroneous. *Id.* In order to find clear error, after reviewing all the evidence, we must be "left with the definite and firm conviction that a mistake ha[d] been committed." *Hernandez v. New York,* 500 U.S. 352, 369, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

■ A trial counsel may not peremptorily challenge a court member based on race. *United States v. Santiago–Davila,* 26 M.J. 380, 390 (C.M.A.1988)(applying *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to courts-martial); RULE FOR COURTS–MARTIAL 912(g)(1), MANUAL FOR COURTS–MARTIAL, UNITED STATES (1998 ed.), Discussion. In addition, "every peremptory challenge by the Government of a member of the accused's race, upon objection, must be explained by trial counsel." *United States v. Moore,* 28 M.J. 366, 368 (C.M.A.1989). The explanation must be race-neutral, related to the case, and legitimate. *Id.* at 369. "Although the reasons stated need not rise to the level justifying a challenge for cause, trial counsel cannot assume or intuit that race makes the member partial to the accused and cannot merely affirm his good faith or deny bad faith in the use of his challenge." *Id.* A proffered reason cannot be "unreasonable," "implausible," or nonsensical. *United States v. Tulloch,* 47 M.J. 283, 287 (1997).

■ The military judge did not make specific findings of fact related to the trial counsel's stated basis for his peremptory challenge, undoubtedly due to the lack of defense objection to the reason given. Nonetheless, recognizing that the military judge is presumed to know the law and apply it correctly, *United States v. Raya,* 45 M.J. 251, 253 (1996), and that he had the benefit of observing the trial counsel's demeanor and that of Sergeant R, we find the following implicit in his ruling granting the peremptory challenge: (1) the stated basis was race-neutral, related to the case, and legitimate; (2) the stated basis was not unreasonable, implausible, or nonsensical; and (3) the stated basis was not a pretext for intentional or purposeful discrimination. *See United States v. Thomas,* 40 M.J. 726, 730–31 (N.M.C.M.R. 1994). We find nothing in the record to dispute the military judge's implicit findings and no basis for finding his ruling clearly erroneous.

II.

In his second assignment of error, the appellant contends that the trial counsel's use of the phrase "chilling with his boy" in describing a defense witness's association with the appellant improperly injected race into the trial and was plain error. We disagree.

During the trial on the merits, the appellant testified and offered a passive inhalation defense. He claimed that the night before a

unit sweep urinalysis, he and PFC R [1] visited an off-base mall. They returned to Marine Corps Base Camp Pendleton in a cab, accompanied by some other people. At the gate, the appellant exited the cab because the sentry discovered that the number of occupants in the car outnumbered the available seat belts. His friends drove off without him. Some time later, he hitched a ride back to his barracks with three other Marines. On the drive back, these three Marines were smoking what appeared to be a cigar, but one that did not smell like a cigar. When the appellant confronted the Marines about the smell, they denied that the cigar contained marijuana. The windows in the car were closed, and he was in the car for 20 to 30 minutes. When he later tested positive for THC on the urinalysis, he concluded that the Marines had indeed been smoking marijuana. He contended that although he did not smoke any of the cigar, his passive inhalation of the smoke in the car must have resulted in the positive test result.

As partial corroboration for this story, the defense offered the testimony of PFC R. PFC R confirmed that the appellant had been in a cab with him, but as a result of the lack of seat belts in the cab, the appellant had been left at the gate. PFC R also indicated that he had known the appellant for 6 months, that they went out together 3 or 4 times a week, and that they "chill on base together." Finally, PFC R stated that he had never seen the appellant smoke marijuana, and he believed him to be a truthful person.

During final argument on findings, the trial counsel discounted the testimony of PFC R with the following comment:

> And I think we can even question the testimony of PFC [R]. Let's not forget, he was chilling with his boy that day. He had no problem telling you that. I don't think he has any problem coming in here and lying to you.

Record at 229. At no time during or after the trial counsel's argument did the defense counsel object. Immediately following the argument, however, the military judge *sua*

*sponte* informed the court members that they should disregard the personal references used by the trial counsel: "He is not a witness before you and his argument is not evidence, so you should not consider any references to 'I' or 'we' or to himself personally as any personal assurance from the prosecutor as to the guilt or innocence of [the appellant]." *Id.* at 229. Nothing was said about the phrase "chilling with his boy."

■ In an argument on findings, the trial counsel is permitted to make "reasonable comment on the evidence in the case, including inferences to be drawn therefrom." RULE FOR COURTS-MARTIAL 919(b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.); *United States v. Easter*, 39 M.J. 876, 878 (A.C.M.R.1994); *United States v. Quarles*, 25 M.J. 761, 773 (N.M.C.M.R.1987). In fact, the trial counsel has an obligation to represent the Government zealously, as long as the argument is fair and reasonably based on the record. ABA MODEL RULES OF PROFESSIONAL CONDUCT, Rule 1.3, Comment (1999 ed.); *United States v. Kropf*, 39 M.J. 107, 108 (C.M.A.1994); *United States v. Edwards*, 35 M.J. 351, 356 (C.M.A.1992). Argument based on matters of common knowledge within the community is also appropriate. *Kropf*, 39 M.J. at 108; *United States v. Meeks*, 41 M.J. 150, 158–59 (C.M.A.1994). Argument may include comments on the testimony, motives, and biases of the witnesses, to the extent supported by the evidence. R.C.M. 919(b), Discussion. "[W]hile the [prosecutor] may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper [argument] calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

■ Unless timely objection to improper argument is made, the issue is waived. R.C.M. 919(c) and 801(g); *United States v. Causey*, 37 M.J. 308, 311 (C.M.A.1993). The waiver rule prevents a defense counsel from remaining silent, making no objection, and

---

1. Although the race of PFC R was not identified in the record of trial, at oral argument, the appellate defense counsel stated that PFC R was an African–American.

then raising the issue on appeal for the first time, well after the military judge could have cured the problem with an instruction to disregard or a limiting instruction. *See United States v. Fisher*, 21 M.J. 327, 328 (C.M.A.1986). The failure of a defense counsel to object can support an inference that any error committed at the time was deemed "to be of little consequence." *United States v. Grandy*, 11 M.J. 270, 275 (C.M.A.1981).

 No place "for gratuitous references to race," however, exists in a criminal prosecution. *Smith v. Farley*, 59 F.3d 659, 663 (7th Cir.1995). "Elementary concepts of equal protection and due process alike forbid a prosecutor to seek to procure a verdict on the basis of racial animosity." *Id.* "[R]acial remarks in a prosecutor's summation can constitute a violation of an accused's right to a fair trial, and ... a prosecutor's argument that invokes race for a purpose that is either illogical or of very slight and uncertain logical validity is constitutionally impermissible." *United States v. Garland*, 39 M.J. 618, 620 (A.C.M.R.1994); *see also McCleskey v. Kemp*, 481 U.S. 279, 309 n. 30, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) ("The Constitution prohibits racially biased prosecutorial arguments."). Argument based on racial animus can constitute a due process constitutional error, and if that error were preserved by a timely objection, an appellate court must reverse unless it is convinced that the error was "harmless beyond a reasonable doubt." *United States v. Ward*, 1 M.J. 176, 180 (C.M.A.1975); *United States v. Moore*, 1 M.J. 390, 391 (C.M.A.1976); *United States v. Adams*, 44 M.J. 251, 252 (1996); *United States v. Riley*, 47 M.J. 276, 278–79 (1997); U.S. CONST. amend. V; *Chapman v. California*, 386 U.S. 18, 21–22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Berger v. United States*, 295 U.S. at 89, 55 S.Ct. 629; *Smith v. Farley*, 59 F.3d at 664 ("[O]ne or two isolated references to race or ethnicity, wholly unlikely to sway a jury, do not compel a new trial on federal constitutional grounds when the defendant's guilt is established by overwhelming evidence."). However, even when not preserved by timely objection, such an error may nevertheless be found to be "plain error." *See United States v. Thompson*, 37 M.J. 1023 (A.C.M.R.1993); *United States v.*

*Lawrence*, 47 M.J. 572 (N.M.Ct.Crim.App. 1997); *United States ex rel. Haynes v. McKendrick*, 481 F.2d 152 (2d Cir.1973).

In this case, the phrase "chilling with his boy" had two possible meanings, one of which had a racial character. The word "chillin" (slang spelling is without the final "g") originated in the 1980s as teenager slang for "relaxing." ROBERT L. CHAPMAN, AMERICAN SLANG 83 (1998). The word "boy," in the context in which it was used here, either referred to a black male friend, or to just a friend, absent any racial connotation. *See id.* at 48; WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (UNABRIDGED) 264 (1971). Thus, as used by the trial counsel, the phrase "chilling with his boy" meant either "hanging out with his black friend" or "hanging out with his buddy." If the former interpretation were intended, or perceived as such by the court members, the argument was error, because the injection of race had no logical validity. If the latter were intended and perceived as such by the members, then there was no error. Based on the record before us, we are unable to determine what the trial counsel intended or what the members perceived. Obviously, the trial counsel was employing PFC R's own statement that PFC R and the appellant "chill out on base together," to imply to the members that the testimony of PFC R was not necessarily worthy of belief. What we do not know is whether his comment, be it intentionally or innocently, injected race into the implication that the testimony of friends should be viewed with suspicion. At a minimum, the trial counsel's use of slang here exhibited a sarcastic insensitivity.

 Assuming *arguendo* that the trial counsel's use of the phrase "chilling with his boy" was error, the appellant's failure to object to the argument constituted waiver of the issue in the absence of plain error. R.C.M. 919(c). To constitute plain error, the error must be obvious and materially prejudice a substantial right of the accused. *United States v. Fisher*, 21 M.J. 327, 328 (C.M.A. 1986); Art. 59(a), UCMJ; *United States v. Powell*, 49 M.J. 460, 461–65 (1998). For the

reasons listed below, we do not find plain error.

First, unlike the cases of *United States v. Lawrence,* 47 M.J. 572 (N.M.Ct.Crim.App. 1997), where the trial counsel referred to "Jamaican brothers," and *United States v. Thompson,* 37 M.J. 1023 (A.C.M.R.1993), where the trial counsel referred to the "stereotypic view" of "black males," no overtly pejorative comment was made in this case. As previously noted, the slang phrase could have been used by the trial counsel merely to turn a witness's own words back on the witness in an attempt to show bias. Second, the slang remark was only a small part of the trial counsel's argument.[2] In his five-page argument on findings and two-page rebuttal, the trial counsel only referred to PFC R the one time. He instead concentrated on the scientific urinalysis evidence, the expert testimony, and the implausibility of the appellant's passive inhalation defense. Third, the defense counsel failed to object to the comment, thereby supporting an inference that any error committed was of small consequence. In fact, the defense counsel specifically countered the trial counsel's comments in his own argument by admitting that the appellant "hung out" with PFC R, but insisting that PFC R had no reason to lie about something so innocuous as the appellant being kicked out of a cab. Record at 236, 238. Fourth, PFC R's corroborating testimony pertained to a matter that was clearly collateral in nature. Fifth, the military judge instructed the court members that argument was not evidence. He also carefully instructed them on the defenses of passive inhalation and good military character, the presumption of innocence, and the prosecution's burden of proof. Finally, the evidence of record weighed heavily in support of the conviction returned by the court members.

Accordingly, we do not find that the argument prejudiced a substantial right of the appellant. Furthermore, we do not find this to be a situation where we must intervene to avoid a "miscarriage of justice." *Fisher,* 21 M.J. at 329 (quoting *United States v. Frady,* 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)); Art. 59(a), UCMJ. We are convinced that there was no "reasonable possibility" that the trial counsel's argument contributed to the members' decision to convict the appellant of the offense when they might otherwise have acquitted him. *See Moore,* 1 M.J. at 392. We find no plain error, and we decline to grant the appellant any relief.

### III.

Finally, in light of the post-trial affidavit that clarifies a typographical error in the record of trial (the trial counsel actually argued that the appellant was "6 times above" the DoD cutoff level, not "86 times above"), the third assignment of error[3] lacks merit.

Accordingly, we affirm the findings and the sentence, as approved on review below.

Senior Judge LEO and Judge TROIDL concur.

---

2. Error in a prosecutor's comments must be viewed in context, rather than standing alone, in order to determine whether they affected the fairness of the trial. *United States v. Young,* 470 U.S. 1, 11–12, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).

3. III. THE MILITARY JUDGE ERRED IN FAILING TO INSTRUCT THE MEMBERS TO DISREGARD TRIAL COUNSEL'S GROSS MISSTATEMENT OF THE LEVEL OF METABOLITE FOUND IN APPELLANT'S URINE AS PART OF HIS ARGUMENT THAT APPELLANT'S DEFENSE OF PASSIVE INHALATION WAS IMPLAUSIBLE.